UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 1:03-CR-91-TAV-SKL-2 |
| OSCAR PAIGE, JR., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant has moved for a reduction in his term of imprisonment and term of supervised release under Section 404 of the First Step Act [Docs. 263, 264, 266]. The government acknowledges that defendant is eligible for a sentence reduction, and it defers to the Court's discretion whether and to what extent to reduce defendant's sentence [Doc. 268]. The Court agrees that defendant is eligible, and it will **GRANT** defendant's motions.

### I. Background: Defendant's Convictions and Original Sentence

A jury convicted defendant in 2004 of conspiracy to distribute and possess with intent to distribute more than fifty (50) grams of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count One"); possession with intent to distribute more than fifty (50) grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 ("Count Two"); and possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §

924(c) ("Count Three") [Doc. 149]. At the time of sentencing, defendant was held responsible for 62.9 grams of cocaine base, resulting in a base offense level of thirty-two (32) [Presentence Report ("PSR") ¶ 28]. Based on prior convictions for armed robbery and four (4) felony drug offenses, however, he was classified as a career offender with an enhanced base offense level of thirty-seven (37) [*Id.* ¶¶ 37, 39, 46–49]. With a criminal history category of VI, due to fourteen (14) criminal history points, apart from his career-offender classification which requires a category of VI, his guideline range for Counts One and Two was 360 months to life imprisonment [*Id.* ¶¶ 55, 77]. Because defendant had at least two (2) prior felony drug convictions and the government timely filed notice of intent to enhance his sentence, defendant's guideline range was restricted by an enhanced mandatory minimum of life imprisonment for Counts One and Two under 21 U.S.C. §§ 841(b)(1)(A) and 851 [*Id.* ¶¶ 11, 44, 47, 75–77]. Additionally, defendant was subject to a penalty requiring his sentence for Count Three to run consecutively [*Id.* ¶ 34]. The enhanced penalty under § 841(b)(1)(A) also required a term of supervised release of ten (10) years to life [*Id.* ¶ 79].

The Court sentenced defendant to life imprisonment for Counts One and Two plus sixty (60) months for Count Three, to be served consecutively [Doc. 149 p. 3]. Defendant also received a sentence of ten (10) years on supervised release, consisting of ten (10) years as to Counts One and Two and five (5) years as to Count Three, to be served concurrently [*Id.*]. The Sixth Circuit subsequently affirmed defendant's convictions on appeal [Docs. 169, 170]. Based on the parties' representations and by the

Court's calculation, defendant has currently served just under 199 months of his sentence of imprisonment.

In the motions before the Court, defendant requests a sentence reduction under Section 404 of the First Step Act, arguing he should benefit from the Fair Sentencing Act's modifications to the statutory penalties for crack cocaine convictions [Docs. 263, 264, 266]. Defendant also contends he is entitled to a plenary resentencing hearing [Doc. 266 p. 7]. The government has responded, acknowledging that defendant is eligible for a sentence reduction but disagreeing that he is entitled to a plenary resentencing and "defer[ring] to this Court's discretion whether and to what extent to grant a reduction" [Doc. 268 p. 1]. Defendant has replied [Doc. 269], so this matter is ripe for resolution.

## II. Analysis: The Propriety of a Sentence Reduction under Section 404

Defendant's motions present two questions. First, is defendant eligible for a sentence reduction under the First Step Act? Second, if he is eligible, is a reduction appropriate in defendant's case, and if so, to what extent?

### A. Defendant's Eligibility for a Section 404 Reduction

Once a Court imposes a sentence, its judgment is generally final with a few narrow exceptions. *Freeman v. United* States, 564 U.S. 522, 526 (2011); *see also* 18 U.S.C. § 3582(b) ("Notwithstanding [certain specified exceptions,] a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes."). Section 404 of the First Step Act provides one such exception to the general

3

rule against modifications to sentences. First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). If a court imposed a sentence for a "covered offense," as defined in § 404(a), then on defendant's motion, the court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." *Id.* § 404(b). The Fair Sentencing Act increased the quantity of crack cocaine required to trigger certain mandatory penalties under 21 U.S.C. § 841(b)(1)(A) from fifty (50) grams to 280 grams and under 21 U.S.C. § 841(b)(1)(B) from five (5) grams to twenty-eight (28) grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (2010). The court only lacks authority to entertain such a motion if the sentence was previously imposed or reduced under the Fair Sentencing Act or if the court previously considered a § 404 motion on the merits and denied it. *Id.* § 404(c). Neither limitation applies to this defendant.

Thus, the question of eligibility turns on whether defendant's convictions for conspiracy to distribute crack cocaine and possession of crack cocaine qualify as covered offenses, and the parties agree that they do [Docs. 263, 264, 266, 268, 269]. Section 404(a) defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." As to Counts One and Two, defendant was convicted under 21 U.S.C. § 841(b)(1)(A)(iii), and the Fair Sentencing Act modified that statutory provision's penalties. Moreover, defendant committed the

4

relevant offenses on or about December 5, 2002 [PSR ¶¶ 1–3].  Accordingly, defendant's drug offenses are "covered offense[s]," and he is thus eligible for a sentence reduction. *See United States v. Boulding*, Nos. 19-1590/1706, 2020 WL 2832110, at *3–6 (6th Cir. June 1, 2020); *see also United States v. Osborne*, No. 3:06-cr-110, 2020 WL 1518621, at *2–3 (E.D. Tenn. Mar. 30, 2020).

### B. Imposing a Reduced Sentence in Consideration of the § 3553(a) Factors

A defendant's eligibility for a § 404 sentence reduction does not "require a court to reduce [his] sentence," § 404(c), and as follows from its limited authorization to impose a reduced sentence, the court's analysis is circumscribed.  *See United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019) (per curiam).  It must impose a reduced sentence "as if [the Fair Sentencing Act was] in effect at the time the covered offense was committed."  § 404(b); *see also Alexander*, 951 F.3d at 708.  The Sixth Circuit has made clear that defendant's eligibility for a reduction under Section 404 does not entitle him to a plenary resentencing as he argues.  *Alexander*, 951 F.3d at 708 ("The First Step Act's limited, discretionary authorization to impose a reduced sentence is inconsistent with a plenary resentencing."); *United States v. Foreman*, No. 2020 WL 2204261, 2020 WL 2204261, at *3 (6th Cir. May 7, 2020) (reaffirming *Alexander*'s holding).  Nevertheless, defendant is entitled to object to the district court's calculation of his amended guideline range, and he may also be entitled to object to the final reduced sentence.  *Boulding*, 2020

WL 2832110, at *8.[1] Additionally, "courts may consider all relevant [§ 3553(a)] factors when determining whether to reduce a defendant's sentence under § 404," including the defendant's post-sentencing conduct. *United States v. Allen*, 956 F.3d 355, 357–38 (6th Cir. 2020); *cf. Boulding*, 2020 WL 2832110, at *9 (holding that First Step Act review "must include . . . renewed consideration of the 18 U.S.C. § 3553(a) factors").

The parties agree that if the Fair Sentencing Act had been in effect at the time defendant committed his crack cocaine offenses, he would have been convicted under 21 U.S.C. § 841(b)(1)(B), rather than § 841(b)(1)(A), and he would have been subject to an enhanced mandatory minimum of only ten (10) years' imprisonment, rather than life [Doc. 266 p. 6; Doc. 268 p. 4–5]. *See also* § 841(b)(1)(B) (stating that a violation of §

---

[1] The Sixth Circuit in *Boulding* held that the district court "did not provide Boulding with an opportunity to present his objections to its calculation of his amended guideline range and in this respect, fell short of the resentencing review envisioned in the First Step Act." 2020 WL 2832110, at *9. Yet, the court seemed to suggest elsewhere that defendant might also have a right to object to the modified sentence, not just to the court's calculation of the guideline range. It noted that the "necessary review" includes an accurately calculated guideline range and "thorough renewed consideration of the § 3553(a) factors" and that a defendant is entitled to an "opportunity to present objections." *Id.* And, its conclusion echoed this broader statement of the holding, stating that First Step Act review must include an "accurate amended guideline calculation and renewed consideration of the 18 U.S.C. § 3553(a) factors" and that "a defendant seeking to present objections must be afforded an opportunity to do so." *Id.* at *9.

A broader reading of *Boulding*'s ruling appears in tension, however, with other recent Sixth Circuit opinions. *See, e.g.*, *United States v. Smith*, 958 F.3d 494, 498–99, 501 (6th Cir. 2020) (holding that sentence modifications under the First Step Act are analogous to sentence modifications under § 3582(c)(2), rejecting defendant's argument that he was entitled to a plenary resentencing, and finding that the district court sufficiently stated its reasons for the modified sentence using a form order), and *Alexander*, 951 F.3d at 709 (affirming district court's order granting a sentence reduction and rejecting defendant's argument that he was entitled to present arguments at a sentencing hearing, arguments that he did not make in his motion for a sentence reduction, including the following: "the district court was unaware of or failed to understand its discretion to depart from the career offender range, he should have received a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b), and his post-offense rehabilitation and serious medical condition should have been considered").

841(a) involving twenty-eight (28) grams or more of cocaine base, where the person committed the violation after a prior conviction for a serious drug felony, "shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment"). The parties also agree that the modified penalty structure would have resulted in a mandatory minimum term of eight (8) years, rather than ten (10) years, on supervised release [Doc. 266 p. 7; Doc. 268 p. 5]. *See also* § 841(b)(1)(B). Yet, as a result of defendant's classification as a career offender, the parties agree, his unrestricted guideline range would have remained 360 months to life for Counts One and Two with a sixty-month consecutive sentence for Count Three [Doc. 266 p. 6; Doc. 268 p. 5]. Thus, if defendant received a sentence at the low-end of the guidelines range, he would have been sentenced to 360 months plus sixty (60) months for a total sentence of 420 months' imprisonment, followed by eight (8) years on supervised release.

Defendant asks the Court to depart from the bottom of the guideline range and impose a sentence of time-served [Doc. 266 p. 7]. He cites "numerous health concerns" and states that he is "almost incapacitated" and takes insulin twice a day [Doc. 263 p. 4]. In a more recent filing, he provides medical records demonstrating that he has been diagnosed with acute decompensated heart failure as of September 2019, hypertension, diabetes with neuropathy, hepatitis C, chronic kidney disease (stage II), coronary artery disease, dyslipidemia, hypoglycemia, breathing problems causing shortness of breath, and other health conditions [Doc. 270 p. 1; SEALED Doc. 274 p. 7–9]. Citing United States Sentencing Guidelines § 5H1.1, defendant also argues that his age, seventy-six

(76), provides a justification for a downward departure in a case, such as his, where "defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration" [Doc. 269 p. 9 (quoting USSG § 5H1.1); *see also* Doc. 266 p. 7, Doc. 274 p. 1]. Defendant also argues that he does not pose a threat to society [Doc. 263 p. 4]. Finally, defendant suggests that a reduction of his sentence to one with a specific number of months could affect the Bureau of Prisons's evaluation of defendant's eligibility for compassionate release [Doc. 266 p. 7], and he argues that the Court and the BOP should consider his vulnerability to COVID-19 given defendant's medical condition and the potential for infection at defendant's facility [Doc. 274 p. 4 (citing BOP records showing four (4) positive inmates and three (3) positive staff members at defendant's facility as of May 11, 2020, as well as twelve (12) recovered inmates and three (3) recovered staff)].

The government defers to the Court's discretion though it appears to oppose a sentence reduction resulting in immediate release [Doc. 268 p. 5, 7]. First, it notes that because defendant has a sixty-month consecutive sentence for his § 924(c) conviction, the Court would have to reduce the sentence for the drug convictions to a term as low as 126 months' imprisonment in order to release defendant immediately, as of the time the government filed its response on May 28, 2019 [*Id.*]. Such a reduction would reduce defendant's sentence for his drug offenses below the amount of time he had already served at the time of the First Step Act's passage and, thus, the government argues, would "result in an undeserved windfall as compared to offenders who were not subject to an

8

additional consecutive sentence for a 924(c) offense" [*Id.* at 5–6]. It would also represent about one-third of the applicable career-offender guideline range, which would result in "an unwarranted sentencing disparity with other similarly situated offenders" [*Id.* at 5]. Second, the government notes that defendant has incurred disciplinary sanctions six (6) times while incarcerated, including as recently as May 2018 [*Id.* at 6]. Finally, the government argues that the Court should not reduce the sentence to any term less than time-served [*Id.* (citing *United States v. Jackson*, No. 5:03-cr-30093, 2019 WL 613500 (W.D.Va. Feb. 13, 2019))].

Although factors similar to those that applied at the defendant's initial sentencing also apply here, the Court has considered these factors again in the context of the instant motion, including the nature and circumstances of the defendant's offenses and the defendant's history and characteristics. Regarding the offense characteristics, the Court notes in particular that defendant's base offense level reflects the recovery of 62.9 grams of crack cocaine in relation to defendant's offense conduct, a significant quantity of a highly dangerous substance [PSR ¶ 22]. The Sixth Circuit found on appeal that "there [was] no doubt that the evidence, taken in the light most favorable to the government [was] sufficient to show both that more than 50 grams of cocaine was possessed with intent to distribute it, and that the defendant assisted or facilitated the possession with intent to distribute by helping to sell the crack [supplied to him]." *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). The Sixth Circuit also held that "there was more than sufficient evidence to establish not only that the conspiracy existed, but also that the

9

defendant knew of, intended to join, and participated in that conspiracy," highlighting evidence that the conspiracy leader "repeatedly fronted $100 worth of crack to the defendant and [defendant's son] for them to sell day and night." *Id.*

Regarding defendant's history and characteristics, the Court begins by noting that it found at defendant's original sentencing that he had six (6) prior felony drug convictions, only two (2) of which were required to trigger the enhanced penalty. *Id.* Indeed, defendant's career offender classification reflects his extensive, decades-long criminal history, which includes a conviction for armed robbery in addition to convictions for drug and other offenses [PSR ¶ 42–53]. The Court's review of defendant's SENTRY report indicates that defendant's post-sentencing conduct has also been less than exemplary. As the government points out [Doc. 268 p. 6], defendant has incurred sanctions for six disciplinary incidents, including one dating from May 2018. Although the number of these incidents is concerning, all but the most recent took place more than ten (10) years ago.

The Court also recognizes, as defendant argues, that defendant is seventy-six (76) and suffers from a variety of serious health conditions. In particular, the Court notes defendant's fall 2019 diagnosis with acute decompensated heart failure, which suggests a deterioration in health. As he argues, defendant's serious heart conditions, diabetes, and age "may put [him] at higher risk for severe illness from COVID-19." *See* Groups at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-

risk.html (last visited May 22, 2020). But, defendant has not contended that he lacks access to medications to treat his conditions in compliance with CDC recommendations for reducing the risk of infection. *Id.* Nor has he argued that his facility would be unable to treat him if he were infected. The number of active infections at defendant's facility, USP Atlanta, has increased by one (1) since he filed his motion to expedite, and the BOP currently reports only two (2) actively infected inmates, a decrease of (2) active infections among inmates. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 4, 2020) (showing two (2) active cases among inmates and six (6) among staff, with fifteen (15) inmates and three (3) staff members recovered).

The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available and the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims. *Id.*

The Court has also considered its discretion to depart or vary from the applicable guidelines range as it deems appropriate. Although defendant has requested a downward departure apparently on the basis of USSG § 5H1.1, he has implicitly also asked for a downward variance, which refers to the selection of a sentence outside the advisory

11

guidelines range based on the weighing of one or more of the § 3553(a) sentencing factors. *United States v. Jordan*, 544 F.3d 656, 671 n.12 (6th Cir. 2008) (distinguishing a departure based on Chapter 5 of the Guidelines from a variance based on the § 3553(a) factors). A variance below the applicable guidelines range is most appropriate when the particular circumstances of the case fall outside the "heartland" of similar cases before the Court in light of the sentencing goals contained in § 3553(a). *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Moreover, the weight of the Court's justification for varying must correspond to the degree of variance from the recommended range. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 50 (2007) ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.")).

Accordingly, after considering parties' arguments, the relevant § 3553(a) factors, and applicable sentencing guidelines, the Court finds a reduction in the defendant's sentence to be appropriate. However, the Court does not believe that a reduction to time-served would adequately reflect the defendant's criminal history and post-sentencing conduct or provide just punishment for the offense. Nor would it adhere to Section 404(b)'s command to impose a sentence "as if [the Fair Sentencing Act was] in effect at the time the covered offense was committed," given defendant's consecutive sixty-month sentence for his Count Three conviction. The government has persuasively argued that reducing the sentence for defendant's drug offenses sufficiently to enable immediate release would result in an unjust disparity between this defendant and other similarly

12

situated career offenders and other defendants convicted of the same offenses but not subject to a sixty-month mandatory consecutive sentence. And, the Court does not find that defendant's risk of infection from COVID-19 eliminates the need to impose a sentence that reflects the purposes expressed in § 3553(a), especially where defendant has not contended that his facility would be unable to treat an infection adequately or that he lacks access to prescribed medication to reduce his risk of infection, and where defendant's recommended guideline range remains 360 months to life imprisonment. At the same time, however, defendant has presented evidence that his health is poor and deteriorating. And, while the Guidelines suggest substituting home confinement for imprisonment would be inappropriate in defendant's case because his guideline range is in Zone D of the Sentencing Table, USSG § 5C1.1(f), Guidelines § 5H1.1 does support departing from the recommended sentence range where "considerations based on age," especially in combination with extremely poor health, "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

Finding that defendant's age in combination with his medical condition take him outside the heartland of typical drug trafficking cases, the Court will reduce defendant's sentence for Counts One and Two to a term of imprisonment of 240 months, which represents a downward departure of 120 months from the bottom of the guideline range. The Court notes that without defendant's career offender classification, his guideline range would be 210–262 months, so a sentence within that range continues to provide

just punishment for the instant offense conduct. The Court will also reduce defendant's term of supervised release to eight (8) years. Especially considering defendant's physical infirmity, the Court finds that his reduced sentence will afford adequate specific deterrence and protect the public from defendant's commission of future crimes. Moreover, 240 months' imprisonment is a significant sanction, which will be "sufficient, but not greater than necessary" to reflect the seriousness of the offenses, afford adequate general deterrence, promote respect for the law, and provide just punishment. § 3553(a).

### III. Conclusion

Accordingly, the Court will **GRANT** defendant's motions [Docs. 263, 264, 266] for a reduction of his terms of imprisonment and term of supervised release under the First Step Act. Defendant's term of imprisonment for Counts One and Two is reduced to 240 months, and his term of supervised release as to those counts is reduced to eight (8) years.[2] All other provisions of the judgment dated February 28, 2005 [Doc. 149], shall remain in effect. Thus, in combination with the sixty-month consecutive sentence, defendant's total term of imprisonment is reduced from life plus sixty months to 300

---

[2] In light of the possibility that the Sixth Circuit's holding in *Boulding* requires this Court to provide defendant an opportunity to object to the modified sentence, even though defendant and the Court agree on the new guidelines range, *see supra* p. 5 n.1, defendant shall have up to and including ten (10) days from the entry of this order to file objections to the modified sentence pronounced here. Although the *Boulding* court stated that "a written presentation or an oral argument" could provide defendant a sufficient opportunity to object, it did not offer any additional guidance as to the form a written presentation might take or the appropriate time to provide for objections before the modified sentence became final. The Court believes requiring written objections within ten (10) days will provide due process as envisioned in *Boulding*.

14

months.  Defendant's motion for status review [Doc. 270] and motion to expedite [Doc. 274] are **DENIED as moot**.  An amended judgment will be filed in this case.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE